**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> *Plaintiff*, <br><br> v. <br><br> LANDMARK CLEARING, INC., <br> a Texas corporation; <br><br> LARRY WUBBENA, individually, and as an officer of Landmark Clearing, Inc; <br><br> ERIC LOEHR, individually, and as an officer of Landmark Clearing, Inc., <br><br> *Defendants*. | CIVIL NO. 4:11cv826 <br> **STIPULATED PERMANENT INJUNCTION AND FINAL ORDER** |

Plaintiff, the Federal Trade Commission ("FTC" or the "Commission"), has filed a

Complaint against Defendants Landmark Clearing, Inc. ("Landmark"), Larry Wubbena

("Wubbena"), and Eric Loehr ("Eric Loehr") (collectively, "Defendants"), for a permanent

injunction and other equitable relief in this action, pursuant to Section 13(b) of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. § 53(b). Plaintiff and Defendants, by and through their

counsel, hereby stipulate to the entry of, and request the Court to enter, this Stipulated

Permanent Injunction and Final Order ("Order"), to resolve all matters of dispute between them

in this action.

**IT IS THEREFORE STIPULATED, AGREED, AND ORDERED** as follows:

1.    This Court has jurisdiction over the subject matter and all of the parties in this case.

2.    Venue is proper as to all parties in this District under 15 U.S.C. § 53(b) and 28

U.S.C. §§ 1391(b) and (c).

3. The activities of Defendants are in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4. The facts that Plaintiff has stated in its Complaint, if true, would state a claim upon which relief may be granted pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45(a).

5. Defendants have entered into this Order freely and without coercion, and Defendants acknowledge that they have read the provisions of this Order and are prepared to abide by them.

6. Plaintiff and Defendants, by and through their counsel, have agreed that the entry of this Order resolves all matters of dispute between them arising from the Complaint in this action, up to the date of entry of this Order.

7. Defendants waive all rights to seek appellate review or otherwise challenge or contest the validity of this Order. Defendants further waive and release any claim they may have against Plaintiff, its employees, representatives, or agents.

8. Defendants agree that this Order does not entitle Defendants to seek or to obtain attorneys' fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. § 2412, and Defendants further waive any rights to attorneys' fees that may arise under said provision of law.

9. Entry of this Order is in the public interest.

## ORDER

### DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

1. "Automated Clearing House Network" or "ACH Network" means the electronic funds transfer system governed by the NACHA Rules that provide for the interbank clearing of

credit and debit entries to accounts at financial institutions.

2. "ACH Debit" means any completed or attempted debit to a consumer's account at a financial institution that is processed electronically through the ACH Network.

3. "Client" means any person, corporation, originator, or other entity, including but not limited to merchants and Independent Sales Organizations ("ISOs"), with whom any Defendant has contracted or agreed to provide Payment Processing services at any point in time.

4. "Client Account Transfer Proceeds" mean any proceeds derived from the transfer or sale of any Corporate Defendant's ACH or credit card Client account.

5. "Corporate Defendant" means Landmark Clearing, Inc., and its successors and assigns.

6. "Defendants" means the Individual Defendants and the Corporate Defendant, individually, collectively, or in any combination.

7. "Financial Representations" mean the Defendants' sworn financial statements and related documents, and testimony submitted to the Commission, including all attachments and supplemental materials, namely:

    a. The Financial Statement of Individual Defendant, Larry Wubbena, signed on August 8, 2011, including the attachments, as revised by subsequent submissions.

    b. The Financial Statement of Individual Defendant, Eric Loehr, signed on August 5, 2011, including the attachments, as revised by subsequent submissions.

    c. The Financial Statement of Corporate Defendant, Landmark Clearing, Inc., signed by Larry Wubbena, Landmark's President, on August 5, 2011, including the attachments; as revised by subsequent submissions.

    d. The affidavit of Bruce Delaney, Landmark's Assistant Secretary and Assistant

Treasurer, dated August 3, 2011;

e.   The sworn testimony of Eric Loehr, provided during his Investigational Hearing, July 7, 2011.

f.   The sworn testimony of Larry Wubbena, provided during his Investigational Hearing, July 8, 2011.

g.   The emails, and the documents and letters attached to the emails, sent from Defendants' counsel (Alysa Hutnik, John Villafranco, Christopher Loeffler) to Commission counsel (Svetlana Gans, Paul Spelman, Michelle Chua, Monica Vaca):

   i.   dated August 15, 2011 (3 emails).

   ii.   dated August 19, 2011.

   iii.   dated August 23, 2011.

   iv.   dated August 31, 2011 (2 emails).

   v.   dated September 13, 2011.

   vi.   dated September 15, 2011.

   vii.   dated September 16, 2011.

   viii.   dated September 20, 2011.

   ix.   dated September 26, 2011.

8.   "Independent Sales Organization" or "ISO" means any person, corporation, organization or other entity that solicits, matches, arranges, or refers Payment Processing Services for Clients, or that solicits, matches, arranges or refers Clients for Payment Processing Services.

9.   "Individual Defendant" and "Individual Defendants" mean, individually or

collectively, Larry Wubbena and Eric Loehr.

10. "Industry Return Rate" means the most recent average Total Return Rate experienced for the ACH Network, bank checks, credit card industry, or any other relevant or comparable payment mechanism by (1) NACHA, the Federal Reserve Board, the Electronic Payments Network, VISA or MasterCard, or a similar industry trade association or payment operator that has access to a large and representative pool of transactions for a particular payment mechanism, or (2) federal bank regulators (such as the Federal Reserve Board, Office of the Comptroller of the Currency, Federal Deposit Insurance Corporation, and Treasury), as periodically made available in their newsletters, press releases, guidance, or other informational materials provided to members of the financial industry.

11. "NACHA" means the NACHA - The Electronic Payments Association.

12. "NACHA Rules" mean the NACHA Operating Rules, as amended from time to time.

13. "Order" means this Stipulated Permanent Injunction and Final Order.

14. "Payment Processing" means directly or indirectly providing a merchant, entity, or person with the means to access any consumer's financial account through the use of any payment mechanism, including but not limited to remotely created payment orders, remotely created checks, ACH Debits, debit card transactions, and credit card transactions. Whether accomplished through the use of software or otherwise, Payment Processing may include, among other things, the performance of any function of collecting, preparing, formatting, charging, or transmitting consumer bank account or credit card data for use in connection with the debiting, charging, or accessing of a consumer's bank or credit card account; monitoring, tracking, and reconciling payments, returns, and charge-backs; providing pre-authorization, post-authorization, and refund services to merchants; and disbursing funds receipts to merchants.

15. "Payment Processor" means any entity providing any Payment Processing services in connection with the sale or purchase of goods or services, including but not limited to depository financial institutions, third-party processors, Independent Sales Organizations, data processing service bureaus, and any others who provide services to verify, correct, format, transmit, or update account or bank routing data.

16. "Prospective Client" means any person, corporation, or other entity, or its subcontractors or agents, that requests from any Defendant the provision of Payment Processing services, or that applies, directly or indirectly, to any Defendant for the provision of Payment Processing services. Prospective Client includes any merchant who seeks to obtain any Defendant's Payment Processing services, whether the relationship is formed through a direct contractual relationship with the Defendant or indirectly through the services of a third party entity, such as an ISO, payment processor, or independent contractor. In the context of efforts to gather information as part of a screening or application process, the term Prospective Client shall include the principal(s) and controlling person(s) of the entity, person(s) who have a majority ownership interest in the entity, and any corporate name, trade name, fictitious name or aliases under which such person(s) do or have done business.

17. "Real Property" means the real property owned by Individual Defendant Larry Wubbena described as "AB 229 M Tollett Survey, Bluewater of Tawakoni, Lots 1-26," on the 2008 Rains County Appraisal District Tax Statement, and any improvements thereon.

18. "Real Property Net Proceeds" means the sum remaining after satisfaction of payment of federal and state taxes, payment to the Liquidator Receiver of the Liquidator Receiver's fees, and payment to third parties of any reasonable and customary brokerage fees, commissions, and closing costs. Provided however, that all such reasonable and customary

brokerage fees, commissions, and closing costs must first be approved by counsel for the FTC.

19. "Remotely Created Check" or "RCC" means a check that is not created by the paying bank and that does not bear a signature applied, or purported to be applied, by the person on whose financial account the check is drawn. A remotely created check is often also referred to as a "demand draft," "bank draft," "bank check," or "preauthorized draft." For purposes of this definition, a remotely created check originates as a paper-based transaction, but can be processed subsequently through electronic means (such as through check imaging or scanning) or through non-electronic means.

20. "Remotely Created Payment Order" or "RCPO" means a payment instruction or order drawn on a person's financial account that is initiated or created by the payee and that does not bear a signature applied, or purported to be applied, by the person on whose financial account the order is drawn, and which is deposited into or cleared through the check clearing system. For purposes of this definition, unlike a remotely created check, a remotely created payment order does not originate as a paper-based transaction. A remotely created payment order is created when a seller, merchant, payment processor, or other entity directly or indirectly enters financial account and routing numbers into an electronic check template that is converted into an electronic file for deposit into the check clearing system.

21. "Representatives" means the Defendants' officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise.

22. "Total Return Rate" means the proportion (expressed as a percentage) of all attempted Payment Processing transactions that are returned for any reason, whether before or after payment, out of the total number of attempted Payment Processing transactions.

23.    The words "and" and "or" shall be understood to have both conjunctive and disjunctive meanings.

## CONDUCT RELIEF FOR VIOLATIONS OF FEDERAL LAW

### I.

**IT IS THEREFORE ORDERED** that Defendants, whether acting directly or through any corporation, subsidiary, division, or other device, are permanently restrained and enjoined from Payment Processing, directly or indirectly, a Remotely Created Check or a Remotely Created Payment Order, and from licensing, renting, or providing software to any third party for use in Payment Processing of Remotely Created Check or Remotely Created Payment Order transactions.

Provided, however, that this Section shall not prohibit Defendant Eric Loehr from employment with any business entity or person that provides Payment Processing as a function of its business operations, so long as Defendant Loehr's participation in such employment is unrelated to the provision, sale, or arrangement of Payment Processing of Remotely Created Check or Remotely Created Payment Order transactions.

Nothing else in this Order shall be construed as an exception to this Section I.

### II.

**IT IS FURTHER ORDERED** that as to all types of payment mechanisms, other than Remotely Created Checks and Remotely Created Payment Orders subject to Section I above, Defendants and their Representatives, whether acting directly or through any corporation, subsidiary, division, or other device, are permanently restrained and enjoined from Payment Processing for any Client that they know or should have known is engaged in or is likely to be engaged in a deceptive or unfair act or practice prohibited by Section 5 of the FTC Act or a

deceptive or abusive act or practice prohibited by the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, including, but not limited to:

A.  the unauthorized debiting or charging of consumer bank or credit card accounts;

B.  the failure to disclose, clearly and conspicuously, all products and services that are sold in conjunction with the offered product or service, and the total cost to purchase, receive, or use any such products or services; and if the offer includes a negative option or free trial feature, all material terms and conditions of the negative option feature, including but not limited to, the fact that the consumer's account will be charged unless the consumer takes an affirmative action to avoid the charge(s); and

C.  the misrepresentation, directly or by implication, of the total costs to purchase, receive, or use any product or service; any material aspect of the performance, efficacy, nature or central characteristics of the product or service; and any material aspect of the nature or terms of the seller's refund, cancellation, exchange or repurchase policies.

### III.

### <u>REASONABLE SCREENING OF PROSPECTIVE CLIENTS</u>

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or through any corporation, subsidiary, division, or other device, are permanently restrained and enjoined from Payment Processing on behalf of each Prospective Client without first engaging in a reasonable screening of the Prospective Client to determine whether the Prospective Client's business practices, related to the offer for which Defendants would provide Payment Processing services, are or are likely to be deceptive or unfair within the meaning of

Section 5 of the FTC Act or deceptive or abusive in violation of the TSR.  Such reasonable screening shall include, but not be limited to:

A. Obtaining from each Prospective Client:

 1. a description of the nature of the Prospective Client's past business(es) and present business, including describing the nature of the goods and services sold for which the Prospective Client seeks Payment Processing services;

 2. a list of all business and trade names, fictitious names, DBAs, and Internet websites under or through which the Prospective Client has marketed or intends to market its goods and services;

 3. each physical address at which the Prospective Client has conducted or will conduct the business(es) identified pursuant to subsection (1) of this Section III.A;

 4. the name and address of every bank and Payment Processor used by the Prospective Client during the preceding two years, and all account numbers used by any such banks or Payment Processors in connection with the Prospective Client;

 5. the Prospective Client's past Total Return Rates and estimate of future Total Return Rates; and

 6. the names of trade and bank references;

B. Taking reasonable steps to assess the accuracy of the information provided pursuant to Section III.A of this Order, including but not limited to reviewing the Internet websites used by the Prospective Client to market its goods or services, and obtaining and reviewing copies of bank statements or processor statements issued by any bank and Payment Processor used by the Prospective Client during the preceding two years;

C.     Obtaining and reviewing all marketing materials for, and a representative sample of, each good or service related to the offer for which the Defendants would provide Payment Processing services for the Prospective Client; and

D.     Comparing the Total Return Rates obtained under Section III.A(5) of this Order to the Industry Return Rate of a relevant or comparable payment mechanism.

## IV.

## MONITORING OF CLIENTS

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or through any corporation, subsidiary, division, or other device, are permanently restrained and enjoined from:

A.     Failing to monitor each Client's transactions to ensure that the Client is not engaged in practices that are deceptive or unfair in violation of Section 5 of the FTC Act, or deceptive or abusive in violation of the TSR.  Such monitoring shall include, but not be limited to, regularly reviewing each Client's Total Return Rates, and reasons provided for returned transactions, as well as examining any unusual or suspect transaction patterns, values, and volume;

B.     Failing to calculate and continually update each calendar day for each Client, the Total Return Rate.  Such calculations must include all transactions processed by Defendants since the commencement of the processing relationship between such Client and Defendants. The Total Return Rate shall be calculated separately for ACH Debit, credit card transactions, and any other transactions conducted via alternative payment mechanisms.  For any Client with multiple accounts, the calculation of the Total Return Rate shall be made for each of the Client's accounts;

C.	Failing to calculate each calendar week for each Client, the total number of attempted debit transactions returned in that week divided by the total number of attempted debit transactions originated in that week.  This calculation shall be calculated separately for ACH Debits, credit card transactions, and any other transactions conducted via alternative payment mechanisms.  For any Client with multiple accounts, the calculation shall be made for each of the Client's accounts;

D.	Failing immediately to conduct a reasonable investigation of the cause for any Total Return Rate and any other calculated rate under Section IV.B and IV.C of this Order that exceeds two and one-half percent (2.5%):

1.	During the investigation, Defendants shall suspend Payment Processing services for the Client under investigation;

2.	Reasonable investigation includes but is not limited to verifying and updating the truth and accuracy of information gathered in compliance with Section III of this Order and any other advertising of the Client; confirming that the Client has obtained required consumer authorizations for the transactions; contacting consumers, financial institutions, Better Business Bureaus, and law enforcement agencies to gather detailed information, including complaints and other relevant information, regarding the Client; and conducting "test" shopping to determine the Client's sales practices, where possible;

3.	At the completion of the investigation, the Defendants shall not recommence Payment Processing services for the Client under investigation unless the Defendants have made a written report that establishes facts that demonstrates, by clear and convincing evidence, that the Client's business practices, related to the

offer(s) for which Defendants provide Payment Processing services, were not and

are not a deceptive or unfair act or practice in violation of Section 5 of the FTC

Act or a deceptive or abusive act or practice prohibited by the TSR, as described in

Section II of this Order.

Nothing in this Section IV shall be read to insulate the Defendants from liability for a

violation of Section 5 of the FTC Act, the TSR, or any provision of this Order.

**V.**

**<u>PROHIBITION ON REFERRAL SERVICES</u>**

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any

corporation, subsidiary, division, or other device, are permanently restrained and enjoined from

referring, directly or indirectly, to any third party in exchange for any payment or fee, any client

and its principals for whom Defendants have provided RCC or RCPO Payment Processing.

**VI.**

**<u>PROHIBITION ON USE OF CONSUMER ACCOUNT INFORMATION</u>**

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any

corporation, subsidiary, division, or other device, are permanently restrained and enjoined from

selling, renting, brokering, purchasing, leasing, transferring, or otherwise disclosing consumers'

bank account or credit card account numbers, that Defendants have received in connection with

Payment Processing services, to any third party; provided, however, that Defendants may utilize

or disclose or transmit such consumer account information to others:

1.      for the purpose of performing Defendants' own Payment Processing services,

pursuant to Section II (Conduct Relief) above;

2.      as requested by the FTC pursuant to Section VII (Cooperation Provisions) of this Order;

3.      to the extent it is necessary to effectuate the transfer of any of Corporate Defendant's ACH or credit card Client accounts to another Payment Processor, and only if such transfer is conducted for the sole purpose of enabling another Payment Processor to perform the ACH or credit card Payment Processing functions previously performed by Landmark; or

4.      as required by law, regulation, or court order.

## VII.

## COOPERATION PROVISIONS

**IT IS FURTHER ORDERED** that Defendants shall, in connection with this action or any subsequent investigations related to or associated with the transactions or the occurrences that are the subject of the FTC's Complaint, cooperate in good faith with the FTC and other law enforcement agencies, appear or cause its Representatives to appear, at such places and times as the FTC shall reasonably request, after written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the FTC.   Within 5 days of the entry of this Order, Defendants shall provide the FTC complete data regarding all consumer financial transactions processed on behalf of each RCPO Client (including the consumer name, address, account number, date and amount of attempted debit transaction, date and amount of returned transaction, if applicable, Total Return Rate, and return reasons), without the service of a subpoena.   In addition, if requested in writing by the FTC, Defendants shall appear, or cause its Representatives to appear, and provide truthful testimony in any trial, deposition, or other proceeding related to or associated with the transactions or the

occurrences that are the subject of the Complaint, without the service of a subpoena.

## VIII.

## <u>EQUITABLE MONETARY RELIEF</u>

**IT IS FURTHER ORDERED** that:

A.      Judgment is hereby entered in favor of the Commission and against the Defendants, jointly and severally, in the amount of one million five hundred thousand dollars ($1,500,000), for equitable monetary relief, provided however, that subject to Section IX below, this judgment shall be suspended upon Defendants' completion of the requirements stated in subparagraphs B - D below.

B.      Defendants shall transfer to the Commission one-hundred twenty six thousand one-hundred dollars ($126,100), which, as Defendants stipulate, their undersigned counsel holds in escrow, for no purpose other than payment to the Commission.  Such transfer shall be made within 7 days of entry of this Order by electronic fund transfer in accordance with the wiring instructions provided by a representative of the Commission.

C.      Defendants shall release and relinquish to the Commission all rights, title, and interests to any and all funds derived from the provision or arrangement of Payment Processing services for RCPOs or RCCs, including but not limited to distributions, dividends, commissions, reserve funds, or income.  Upon receipt of any such funds, Defendants shall immediately transfer such funds to the Commission in accordance with the wiring instructions provided by a representative of the Commission, without any reduction or offset of the full amount received by Defendants.

D.      Individual Defendant Wubbena:

1.      Represents that he is the sole owner of the Real Property, and acknowledges

that the Commission is relying upon this material representation.

2.         Waives all claims to, unconditionally releases, and consents to transfer to the Liquidator, or to his designated trust, possession and legal and equitable title of the Real Property.

3.         Shall, within thirty (30) days of entry of this Order, unless otherwise agreed to in writing by the Liquidator and the Commission, transfer possession and legal and equitable title of the Real Property to the Liquidator, or to his designated trust.

4.         Represents that there are no encumbrances to the Real Property.

5.         Shall not add any encumbrances to the Real Property after entry of this Order.

6.         Shall cooperate fully with the Liquidator and take such other steps as the Liquidator may require to transfer to the Liquidator, or to his designated trust, possession and legal and equitable title to the Real Property, including executing any documents, procuring the signatures of any person or entity under his control, providing access to the Real Property, providing any necessary information, and turning over the Real Property. Except as set forth in Section IX.F of this Order, the costs and expenses of transferring the Real Property to the Liquidator shall be paid by the Liquidatorship.

7.         Prior to transferring possession and legal and equitable title of the Real Property to the Liquidator, shall maintain and take no action to diminish the value of the Real Property; remain current on and apply any income received from the Real Property to all amounts due and payable on the Real

Property, including but not limited to mortgage, tax, homeowner's assessments, insurance, maintenance, and similar fees.

8.      Shall, upon entry of this Order, cause existing insurance coverage for the Real Property to remain in force and shall both notify the insurance carrier(s) immediately of the appointment of the Liquidator and request that the Liquidator and the Commission be added to the insurance policy or policies as additional insureds thereunder.

9.      Nothing in this Order requires Individual Defendant Wubbena to pay any amount relating to or concerning the Real Property, including, but not limited to, any taxes, insurance, homeowner's assessments, maintenance, and similar fees, after Individual Defendant Wubbena has transferred possession and legal and equitable title of the Real Property to the Liquidator.  The transfer of possession of the Real Property occurs when Individual Defendant Wubbena delivers all keys and security codes, if any, to the Liquidator along with written notice that possession is surrendered.

E.      Should Defendants transfer or sell any of Corporate Defendant's ACH or credit card Client accounts to any third party in exchange for any direct or indirect payment or fee, such transfer or sale shall be upon terms and conditions acceptable to the Commission, pursuant to the following provisions:

1.      Defendants shall provide to counsel for the FTC as soon as possible, and in any event, not later than one (1) week prior to the closing date for the transfer or sale of any ACH or credit card Client account (a) a copy of the proposed contract relating to the proposed transfer or sale; (b) written notice of the closing date; and

(c) contact information for the proposed buyer including the name, address, and telephone number of the proposed buyer;

2. Within five (5) days of the transfer or sale of any ACH or credit card Client account, Defendants shall provide counsel for the FTC with proof of such transfer, including the amount paid for any such account; and

3. Within five (5) days of the transfer or sale of any ACH or credit card Client account, Defendants shall transfer the Client Account Transfer Proceeds to the Commission, or its designated agent, in accordance with the wiring instructions provided by a representative of the Commission.

F.      Defendants relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law.  Individual Defendant Wubbena shall relinquish all dominion, control, and title to the Real Property and to the Real Property Net Proceeds, to the fullest extent permitted by law.  Defendants shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise.

G.      All funds paid to the Commission pursuant to this Order shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including but not limited to consumer redress and any attendant expenses for the administration of any equitable relief.  In the event that direct redress to consumers is wholly or partially impracticable or that funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to the Defendants' practices alleged in the Complaint.  Any funds not used for such equitable relief shall be deposited into the United States Treasury as disgorgement. Defendants shall have no right to challenge the Commission's choice of remedies under this

Order.  The Defendants shall have no right to contest the manner of distribution chosen by the Commission.

H.      Defendants agree that the facts as alleged in the Complaint filed in this action shall be taken as true without further proof in any bankruptcy case or subsequent civil litigation pursued by the Commission to enforce its rights to any payment or money judgment pursuant to this Order, including but not limited to a nondischargeability complaint in any bankruptcy case.  Defendants further stipulate and agree that the facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and that this Order shall have collateral estoppel effect for such purposes.

I.      Defendants agree that they will not, directly or indirectly, take any deduction, capital loss, or other tax benefit on any federal, state, or local tax return for the payment made toward satisfaction of the judgment set forth in Section VIII.  Within ten (10) days of receipt of a written request from a representative of the Commission, Defendants must take all necessary steps, such as filing completed IRS Forms 4506 or 8821, to cause the Internal Revenue Service (IRS) or other tax authority to provide any requested tax information directly to the Commission. The requested information can include amended tax returns and any other filings that Defendants have the authority to release, including those of any businesses that any Defendant, individually or collectively with any other Defendant, is the majority owner of or directly or indirectly controls.

J.      No portion of any payment under the Judgment herein shall be deemed a payment of any fine, penalty, or punitive assessment.

K.      In accordance with 31 U.S.C. § 7701, Defendants are hereby required, unless they

have done so already, to furnish to the Commission all taxpayer identifying numbers, including Social Security and employer identification numbers, which shall be used for purposes of collecting and reporting on any delinquent amount arising out of Defendants' relationship with Plaintiff.

## IX.

## AVALANCHE CLAUSE

A.      The Commission's agreement to, and the Court's approval of, the suspension of the judgment, pursuant to Section VIII, is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' Financial Representations regarding their financial condition, all of which the Commission relied upon in negotiating and agreeing to the terms of this Order.

B.      The suspension shall be lifted on the monetary judgment in Section VIII, above, as to any Defendant, if upon motion by the Commission the Court finds:

1.      that the Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the Financial Representations as defined in this Order; or

2.      that the Defendant is in default on any obligation under Section VIII.

*Provided, however*, that in all other respects, this Order shall remain in full force and effect, unless otherwise ordered by the Court; and,

*Provided further*, that proceedings initiated under this provision would be in addition to, and not in lieu of, any other civil or criminal remedies as may be provided by law, including any proceedings that the Commission may initiate to enforce this Order.

C.      If the suspension of the judgment is lifted, the judgment shall become immediately

payable, and the amount due shall be calculated as follows: the judgment amount specified in Section VIII above (which the parties stipulate only for purposes of this Section represents unjust enrichment alleged in the Complaint), minus any payments previously made pursuant to Section VIII, plus interest computed from the date of entry of this Order pursuant to 28 U.S.C. § 1961. Such payment shall be made within 7 days of entry of this Order by electronic fund transfer in accordance with wiring instructions previously provided by a representative of the Commission.

## X.

### APPOINTMENT AND DUTIES OF LIQUIDATOR RECEIVER

**IT IS FURTHER ORDERED** that Charlene Koonce, of Scheef & Stone, L.L.P., is appointed as Liquidator Receiver ("Liquidator") with all the rights and powers of an equity receiver, over the Real Property.

A.      As soon as reasonably possible, the Liquidator shall, at reasonable cost and in a commercially reasonable fashion, liquidate the Real Property. Counsel for the Commission shall approve the final sale price of the Real Property. Should the Real Property be auctioned, any minimum bid will be set by counsel for the Commission. Within thirty (30) business days after all of the Real Property has been liquidated, the Liquidator shall account for the Real Property Net Proceeds derived, and transfer all such Real Property Net Proceeds to the Commission. The Liquidator shall make the transfer required by this paragraph by wire transfer, in accordance with instructions provided by a representative of the Commission.

B.      Upon Individual Defendant Wubbena's transfer or surrender of legal and equitable title and possession, the Liquidator is authorized to assume responsibility for management of the Real Property, including but not limited to making disbursements for

operating expenses as may be appropriate, undertaking repairs, and taking any other actions necessary to efficiently manage the Real Property and to maintain its value.

C.    The Liquidator shall take all necessary action to procure appropriate insurance for the Real Property, naming the Liquidator and the Commission as insureds, and to remove Individual Defendant Wubbena as an insured.  The Liquidator may, as an option, keep in force the existing insurance coverage(s), each of which shall name the Commission and the Liquidator as additional insureds thereunder.

D.    The Liquidator shall have all necessary powers to operate and otherwise manage the Real Property including, without limitation, the following powers and responsibilities:

1.    To take possession of the Real Property;

2.    To supervise and oversee the management of the Real Property, including making payments and paying taxes as and when the Liquidator has funds available from the Real Property, or from the liquidation of the Real Property;

3.    To employ such counsel, real estate agents, auctioneers, appraisers, accountants, contractors, other professionals, and other such persons as may be necessary in order to carry out his duties as Liquidator and to preserve, maintain, and protect the Real Property;

4.    To determine or abrogate, in the Liquidator's sole sound business discretion, any or all agreements, contracts, understandings or commitments entered into by any Defendant with respect to the Real Property to the extent permitted by applicable law;

5.	To open new accounts with, or negotiate, compromise or otherwise modify Individual Defendant Wubbena's existing obligations with third parties, including utility companies, other service providers or suppliers of goods and services related to the Real Property, and to otherwise enter into such agreements, contracts, or understandings with such third parties as are necessary to maintain, preserve, and protect the Real Property;

6.	To open new bank accounts with respect to the Liquidator's management and operation of the Real Property;

7.	To apply to this Court for further directions and for such further powers as may be necessary to enable the Liquidator to fulfill his duties; and

8.	To rent the Real Property to third parties, until the Real Property is sold.

E.	The Liquidator shall keep a true and accurate account of any and all receipts and expenditures and periodically file with the Court a Liquidatorship Report under oath, accurately identifying all such revenues received and expenditures made, including adequately detailed information concerning income, expenses, payables and receivables. These periodic filings shall be served by the Liquidator on the Commission and Defendants' counsel.

F.	Defendants and their Representatives are enjoined from interfering in any manner with the Liquidator's management and operation of the Real Property, and the Defendants and their Representatives are enjoined and restrained from collecting any rents or profits which are now or hereafter become due with respect to all or any portion of the Real Property and from interfering in any way with the Liquidator's collection of such rents or profits.

G.	The Liquidator shall not be bound by all or any unsecured contracts, agreements, understandings or other commitments in the nature of service contracts the

Defendants had, have or may have with third parties with respect to the Real Property, whether oral or written, and the Liquidator shall be authorized, by affirmative written ratification executed by the Liquidator, to agree to become bound by any such contracts, agreements, understandings or other commitments, or may agree to enter into new or amended contracts, agreements, understandings or other commitments.

H.      Any and all sums collected by the Liquidator over and above those necessary to manage the Real Property or those necessary to make payments authorized by this Order shall be paid to the Commission.

I.      The Liquidator is entitled to reasonable compensation for the performance of duties undertaken pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by him.  The Liquidator's compensation and the compensation of any persons hired by him are to be paid solely from the proceeds of the sale of the Real Property, and such payments shall have priority over all other distributions except for any transfer fees, recording fees, or other payments owed through the transfer of the Real Property at the time of its sale.

J.      The Liquidator shall file with the Court and serve on the parties a request for the payment of reasonable compensation at the time of the filing of periodic reports and no less than every sixty (60) days.  The Liquidator shall not increase the fees or rates used as the bases for such fee applications without prior approval of the Commission and the Court.  The Defendants shall have no right to object to the Liquidator's fees or compensation.  Absent a violation of this Order that causes the Liquidator to incur fees or expenses, Defendants shall not be liable for the Liquidator's fees or expenses beyond the amount paid pursuant to Section VIII.

K.      The Liquidator shall file his final application for fees, complete liquidation, and terminate his service within 12 months of the execution of this Order unless

good cause is shown to extend beyond 12 months.  At the termination of the Liquidator's duties, the Liquidator shall transfer any unliquidated right, title, and interest in the Real Property to the Federal Trade Commission.

L.       Upon the final transfer of all funds to the Commission pursuant to this Section, the duties of the Liquidator shall terminate.

M.      Upon entry of this Order, the Liquidator shall file with the Clerk of Court a bond in the sum of one hundred thirty-eight thousand ($138,000) dollars, with sureties to be approved by the Court, conditioned that the Liquidator will well and truly perform the duties of the office and abide by and perform all acts that the Court directs.

N.       The Liquidator is bound by, and must comply with, the Local Rules of Civil Procedure and the Federal Rules of Civil Procedure.

## XI.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that for the purpose of (i) monitoring and investigating compliance with any provision of this Order and (ii) investigating the accuracy of Defendant's Financial Representations upon which the Commission's agreement to this Order is expressly premised:

A.       Within ten (10) days of receipt of written notice from a representative of the Commission, Defendants each shall submit additional written reports, which are true and accurate and sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and/or provide entry during normal business hours to any business location in each Defendant's possession or direct or indirect control to inspect the business operation;

B.      In addition, the Commission is authorized to use all other lawful means, including but not limited to:

1.      obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45, and 69;

2.      having its representatives pose as consumers and suppliers to Defendants, their employees, or any other entity managed or controlled in whole or in part by any Defendant; without the necessity of identification or prior notice; and

C.      Defendants each shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order.  The person interviewed may have counsel present.

**Provided, however,** that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## XII.

## <u>COMPLIANCE REPORTING</u>

**IT IS FURTHER ORDERED** that in order that compliance with the provisions of this Order may be monitored:

A.      For a period of five (5) years from the date of entry of this Order:

1.      Each Individual Defendant shall notify the Commission of the following:

(a)      Any changes in such Defendant's residence, mailing addresses, and

telephone numbers, within ten (10) days of the date of such change;

(b)     Any changes in such Defendant's employment status (including self-employment), and any change in such Defendant's ownership in any business entity, within ten (10) days of the date of such change.  Such notice shall include the name and address of each business that such Defendant is affiliated with, employed by, creates or forms, or performs services for; a detailed description of the nature of the business; and a detailed description of such Defendant's duties and responsibilities in connection with the business or employment; and

(c)     Any changes in such Defendant's name or use of any aliases or fictitious names within ten (10) days of the date of such change;

2.     Defendants shall notify the Commission of any changes in the structure of Corporate Defendant or any business entity that any Defendant directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to: incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; or a change in the business name or address, at least thirty (30) days prior to such change, ***provided*** that, with respect to any such change in the business entity about which a Defendant learns less than thirty (30) days prior to the date such action is to take place, such Defendant shall notify the Commission as soon as is practicable after obtaining such knowledge.

B.     One hundred eighty (180) days after the date of entry of this Order, and annually thereafter for a period of five (5) years, Defendants each shall provide a written report to the Commission, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order.

This report shall include, but not be limited to, the following:

    1.    For each Individual Defendant:

    (a)    such Defendant's then-current residence address, mailing addresses, and telephone numbers;

    (b)    such Defendant's then-current employment status (including self-employment), including the name, addresses, and telephone numbers of each business that such Defendant is affiliated with, employed by, or performs services for; a detailed description of the nature of the business; and a detailed description of such Defendant's duties and responsibilities in connection with the business or employment; and

    (c)    Any other changes required to be reported under Subsection A of this Section.

    2.    For all Defendants:

    (a)    A copy of each acknowledgment of receipt of this Order, obtained pursuant to the Section titled "Distribution of Order;"

    (b)    Any other changes required to be reported under Subsection A of this Section.

C.    Each Defendant shall notify the Commission of the filing of a bankruptcy petition by such Defendant within fifteen (15) days of filing.

D.    For the purposes of this Order, Defendants shall, unless otherwise directed by the Commission's authorized representatives, send by overnight courier (not the U.S. Postal Service) all reports and notifications to the Commission that are required by this Order to:

        Associate Director for Enforcement
        Bureau of Consumer Protection
        Federal Trade Commission

600 Pennsylvania Avenue, N.W.
Washington, D.C.  20580
RE:  FTC v. Landmark Clearing, Inc., et al., Civil Action No. 4:11cv826.

**Provided** that, in lieu of overnight courier, Defendants may send such reports or notifications by first-class mail, but only if Defendants contemporaneously send an electronic version of such report or notification to the Commission at DEbrief@ftc.gov.

E.  For purposes of the compliance reporting and monitoring required by this Order, the Commission is authorized to communicate directly with each Defendant.

## XIII.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that for a period of eight (8) years from the date of entry of this Order, Corporate Defendant, in connection with the marketing or provision of any Payment Processing services, and Individual Defendants for any business for which they, individually or collectively, are the majority owner or directly or indirectly control, are hereby restrained and enjoined from failing to create and retain the following records:

A.  Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.  Personnel records accurately reflecting:  the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.  Client files containing the names, addresses, and phone numbers of the Clients; Client application forms and supporting documentation submitted to Defendants, pursuant to

Sections III and IV of this Order; contracts entered into with Defendants; and any other Client information obtained in the ordinary course of business;

D.      Records sufficient to demonstrate that consumers have provided authorization for debits or charges against their bank accounts or credit card accounts prior to the time that Defendants processed debits or charges against such consumers' bank accounts or credit card accounts;

E.      Complaints and refund requests (whether received directly, indirectly or through any third party) and any responses to such complaints or requests, including but not limited to all complaints relating to the unauthorized debiting or charging of the consumer's bank account or credit card account;

F.      Copies of all Defendants' Internet websites, advertisements, or other marketing materials;

G.      All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the FTC pursuant to the Section titled "Compliance Reporting."

## XIV.

## DISTRIBUTION OF ORDER

**IT IS FURTHER ORDERED** that for a period of five (5) years from the date of entry of this Order, Defendants shall deliver copies of the Order as directed below:

A.      Corporate Defendant:  Each Corporate Defendant must deliver a copy of this Order to (1) all of its principals, officers, directors, and managers; (2) all of its employees, agents, and

representatives who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting." For current personnel, delivery shall be within five (5) days of service of this Order upon such Defendant. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

B.      Individual Defendant as control person: For any business that an Individual Defendant controls, directly or indirectly, or in which such Defendant has a majority ownership interest, such Defendant must deliver a copy of this Order to (1) all principals, officers, directors, and managers of that business; (2) all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting." For current personnel, delivery shall be within five (5) days of service of this Order upon such Defendant. For new personnel, delivery shall occur prior to them assuming their responsibilities. For any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

C.      Individual Defendant as employee or non-control person: For any business where an Individual Defendant is not a controlling person of a business but otherwise engages in conduct related to the subject matter of this Order, such Defendant must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct.

D.      Defendants must secure a signed and dated statement acknowledging receipt of the

Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Section.

## XV.

## ACKNOWLEDGMENT OF RECEIPT OF ORDER

**IT IS FURTHER ORDERED** that each Defendant within five (5) business days of receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## XVI.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**It is SO ORDERED.**
**SIGNED this 28th day of December, 2011.**


_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE